## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-CV-20905-BLOOM/LOUIS

LIDIA BORGES,

      Plaintiff,

vs.

ANDREW SAUL, Commissioner
of Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Plaintiff Lidia Borges' Motion for Summary Judgment (ECF No. 18) and Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment (ECF No. 19). The Honorable Beth Bloom, United States District Judge, has referred the cross motions to the undersigned for a Report and Recommendation (ECF No. 17). The undersigned has fully considered the Motions and the record and is otherwise duly advised in the matter.

### I.    PROCEDURAL BACKGROUND

This case involves an application for social security disability benefits under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* On September 2, 2016, Plaintiff applied for social security disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging an ongoing disability due to hypertension, arthritis, and pain, swelling, and weakness in her right shoulder, all of which began on September 1, 2015 (R. 195). These claims were initially denied on September 28, 2016, and again denied upon reconsideration on December

1

19, 2016 (R. 103, 110).

Following the denial of her claims, Plaintiff requested an administrative hearing, which was held on July 12, 2018, before Administrative Law Judge ("ALJ") Clara H. Aranda (R. 38-80). At the hearing, Plaintiff was represented by counsel, and both Plaintiff and Vocational Expert ("VE"), Heidi Fetter, testified (*id.*).

On December 4, 2018, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits and supplemental income, finding that Plaintiff was not disabled within the meaning of the Act (R. 22-33). Plaintiff requested a review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on January 7, 2020 (R. 1-3). Plaintiff now seeks judicial review of the ALJ's decision, and both Parties moved for summary judgment. Plaintiff has exhausted her administrative remedies, and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## II.     STANDARD OF REVIEW

### A.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the

reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## B.  Regulatory Framework

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her

3

past relevant work despite her impairments; and (5) whether she can perform other work found in the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

### III. THE RECORD

#### A. Hearing Testimony

##### i. Plaintiff's Testimony

Plaintiff was 55 at the time of her hearing and living with her partner in a house in Miami, Florida (R. 44-45). She graduated from high school in the United States and is able to read and write in English (R. 46). Plaintiff worked as a customer service representative at a bank for 15 years, but she testified that she had to retire because the bank found her to be incompetent (R. 48). Plaintiff then briefly worked for Obamacare doing new inscriptions for the program and later worked at an insurance company as a customer service representative and supervisor of their call center (R. 49-51). Plaintiff averred that she could no longer work because she fell while at home;the pain from  her shoulder was so severe that she passed out at her jobsite on multiple occasions, and the pain medications would put her to sleep while at work, so the company let her go (R. 51-52).

At the hearing, Plaintiff was still not sure of the medical condition that was causing the pain in her right arm, but claimed that the pain limited her ability to walk, stand, or sit for long periods of time, and testified that she tries not to lift anything because it hurts (R. 52-55). She further testified that, on average, the pain level is at an eight out of ten, but can get so bad that she sometimes has to go to the emergency room for morphine (R. 63-64). She testified that her previous physician gave her steroid shots to alleviate the pain, which would work for 30 days before wearing off, but her new doctor, Dr. Hahn, did not want to continue giving her steroid shots (R. 56-57).

Plaintiff also claimed that physical therapy helped her for a bit, but she had to stop the therapy sessions as she was only allotted a limited amount of sessions (R 57).

As a result of this pain, Plaintiff claimed she needs help not only getting dressed but doing everyday activities such as cooking, laundry, showering, and attending to personal hygiene (R. 59-62). Her partner assists her with these tasks, though she is able to do certain things like fold towels and clear the table of disposable plates and cups (*id.*). She also claimed the pain prevents her from driving regularly, as she can only drive with one hand; that it prevents her from sleeping through the night and prevents her from typing for a long time or doing work with a computer mouse (R. 45, 57-59, 66). To assist with the pain, Plaintiff testified that she generally takes oxycodone only once a week because it knocks her out but will take it more frequently if the pain is really severe (R. 65). She also takes Tramadol 15 milligrams on a daily basis (R. 66).

### ii.     Vocational Expert Testimony

VE, Heidi Fetter, also testified at the hearing. Ms. Fetter summarized Plaintiff's past work as a customer service representative as having a light exertional level and a specific vocational profile ("SVP") of 6; her past work as a data entry clerk as having an SVP of 4 and being sedentary; and that there is no Dictionary of Occupational Titles ("DOT") number for telemarketer supervisor, but that the job of telemarketer has an SVP of 3 and is sedentary (R. 71). When presented with a hypothetical person of the same age and educational background as Plaintiff, who is limited to the light exertional level; who can never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to vibration; avoid concentrated exposure to workplace hazards, such as unprotected heights and open machinery; is limited to no kneeling, crouching, and crawling; and is limited to frequent use of the right dominant upper extremity for reaching in all directions, Ms. Fetter testified that this hypothetical person would be able to perform all of Plaintiff's past work

(R. 71-71). When the initial hypothetical was modified to be limited to only sedentary work, Ms. Fetter testified that Plaintiff's prior work as a data entry clerk and telemarketer could be performed (R. 72). If the first or second hypothetical was modified to add an additional limitation of no reaching shoulder height or above with the dominant right upper extremity, Ms. Fetter concluded that with those restrictions, the hypothetical individual would be precluded from doing any of the Plaintiff's past work (R. 73). However, under those restrictions, a person could be a school bus monitor, a callout operator, or an usher (R. 76). Lastly, it was asked whether a person could perform any sedentary jobs with only the occasional use of the dominant upper extremity, and Ms. Fetter concluded these restrictions were work preclusive (R. 77). Ms. Fetter further testified that the skills Plaintiff acquired from past work would not transfer over to another job (R. 78). Ms. Fetter testified that all her responses were consistent with the DOT (*id.*).

### B. Summary of Relevant Medical Evidence

#### i. Doctors Hospital Emergency Department

Records reveal that Plaintiff went to Doctors Hospital Emergency Department ("Doctors Hospital") on October 4, 2015, following an incident the previous evening during which Plaintiff slipped and fell on her right shoulder (R. 290). The notes reflect that Plaintiff was experiencing "moderate pain" and had no "tingling, numbness, weakness or suspected foreign body" nor did Plaintiff have back or neck pain (*id.*). Plaintiff did, however, have moderate tenderness and mild swelling located in the later aspect of the shoulder and proximal humerus, and she had a limited range of motion due to pain (R. 291). X-Rays of her shoulder revealed no fractures, dislocation, traumatic malalignment, or pathological soft tissue calcifications (R. 303-04). Plaintiff had a splint and sling applied and was discharged (R. 292).

Plaintiff returned to Doctors Hospital on October 29, 2015, complaining of a stabbing pain

in her right shoulder, but displayed no swelling or redness (R. 311). The notes indicate that Plaintiff's pain had improved after her fall but returned upon lifting a heavy object (*id.*). The records further conclude that Plaintiff had a right rotator cuff sprain or strain and probable muscle strain on the right shoulder, for which Naprosyn and Flexeril were prescribed (R. 313). Plaintiff presented limited range of motion of her right shoulder due to the pain, but was discharged in improved condition with the directions to apply ice, wear a sling, elevate affected areas,  limit lifting until released, and not to work for three days (R. 312-13).

### ii.  Jackson Memorial Hospital

Plaintiff visited Jackson memorial Hospital ("Jackson") on January 21, 2016, and presented with right shoulder pain that Plaintiff claimed was worsening since her fall (R.327). The record shows that the degree of pain was moderate, and that there was no redness, tenderness or swelling, though she displayed a very limited range of motion of her shoulder (R. 327-28). There was no evidence of acute fractures or dislocations (R. 330). Plaintiff was proscribed Flexeril and Motrin and was told to follow up with her primary care physician in one week (*id.*).

When Plaintiff attended her follow up on February 6, 2016, she presented with shoulder pain and swelling (R. 379). The notes indicate that the pain and swelling was a 9/10 (*id.*). On February 12, 2016, Plaintiff complained of unrelieved severe shoulder pain radiating to her whole arm, as well as additional complaints of headache and dizziness, resulting in a direct referral to the emergency department for stabilization of her blood pressure, which was 194/110. (R. 353). The record reflects that Plaintiff had still not at that point seen the orthopedic specialist to whom she was referred (*id.*). An MRI done during her last visit showed mild osteoarthritic changes (*id.*). Plaintiff was proscribed Voltaren and Lisinopril, and physical therapy (*id.*).

The record reflects that that Ms. Borges underwent at least five physical therapy sessions

from February 29, 2016 through March 22, 2016. (Tr. 391-401, 403-14). During her first session on February 29, 2016, Plaintiff rated her pain as 9/10, and reported difficulties with sleeping, grooming, dressing, chopping, and bathing (R. 404). Plaintiff stated her goal was to not take any medication (*id.*). The notes reflect that her right upper range of motion was limited due to pain, was guarded, and had strength deficits (R. 407-08). On March 11, 2016, Plaintiff rated her pain as an 8/10 (R. 391). The notes reflect that Plaintiff was hypersensitive to touch and apprehensive to perform (R. 393). At her next physical therapy session on March 14, 2016, Plaintiff initially rated her pain as an 8/10, but then stated her pain decreased to a 5/10 following the session (R. 394-96). On March 22, 2016, Plaintiff again rated her pain as an 8/10, which decreased to a 7/10 following the session (R. 399). The Record also shows that she attended physical therapy on June 21, 2016, but was discharged from physical therapy services due to her lack of compliance with visits (R. 410).

Beyond the physical therapy sessions, Plaintiff continued to go to Jackson to address her shoulder pain. On March 8, 2016k Plaintiff rated her pain as a 5/10 (R. 430). The notes state that she does not take oxycodone because it makes her sleepy and no longer takes Flexeril; she also no longer uses her sling because it is uncomfortable (R. 430). It was stated that the pain was likely due to supraspinatus tendinopathy, and Plaintiff was advised to take Tylenol and Tramadol (R. 436). On March 15, 2016, Plaintiff complained of shoulder pain rated 20/10 and she was given steroid injection (R. 424-26).

On July 28, 2016, Plaintiff presented with moderate shoulder pain that was not radiating and presented with no swelling (R. 375). Notes from that visit indicate that her condition was improving, "progressing as expected, well controlled." (R. 376). She was discharged with instructions to follow up with her primary care provider or clinic. On August 30, 2016, Plaintiff

saw Dr. Valbuena, who noted that her pain had since come back after receiving the steroid shot in March, though the pain had resolved entirely for a month after receiving the injection (R. 420). Dr. Valbuena's notes also state that Plaintiff stopped completing her home exercises due to return of the pain, which Plaintiff rated at a 20/10, and that Plaintiff went to the emergency room two weeks prior due to pain (*id.*). On October 7, 2016 Plaintiff reported moderate pain on a scale of 8/10 and reported severe pain on October 18, 2016, though there was no swelling (R. 444-50).

Upon referral by Dr. Valbuena, Plaintiff underwent an Occupational Therapy evaluation on March 10, 2017, at which her chief complaint was constant pain and inability to use her right arm for lifting, reaching, cooking, and activities of daily living (R. 540). The evaluation assessed that Plaintiff reported significant pain, limited range of motion and increased strength, but that her rehabilitation potential was fair if she complied with treatment (R. 549).

Finally, Dr. Valbuena completed a set of questionnaires dated July 17, 2018, in which she indicated that she last saw Plaintiff almost one year prior, in August 2017 (R. 561-77). Dr. Valbuena indicated a diagnosis of right shoulder pain due to supraspinatus tendinopathy, which was supported by the MRI of the right upper extremity (R. 563). Dr. Valbuena confirmed that Ms. Borges's medications cause side-effects of drowsiness; Ms. Borges presented with right shoulder pain and decreased range of motion; her symptoms were consistent with objective and clinical findings; her complaints were credible; her pain was present to such an extent as to be distracting to the adequate performance of daily activities or work; and walking, standing, sitting, bending, stooping, or moving of the extremities caused an increase in the severity and degree of pain, but not to the extent the person would abandon work-related tasks on a regular and sustained basis over the course on an 8-hour work day. (R. 563-67). Dr. Valbuena concluded that Plaintiff could perform sedentary work on a sustained basis, but not light work (R. 569). Dr. Valbuena opined

that during an 8-hour workday, Plaintiff could sit for 4 hours; stand or walk for 4 hours; lift up to 10 pounds frequently with both extremities, and up to 20 pounds occasionally with her left upper extremity; that her pace and accuracy of keyboarding would be noticeably diminished; and that she likely would be able to use her arms and hands without significant exacerbation of her symptoms at a medium pace (R. 573-75).

### iii.   State Agency

A State agency medical consultant, Thomas Bixler, M.D., submitted a disability determination in December 2016 (R. 91-102) and determined that Plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push/pull with limited right upper extremity; reach in any direction overhead with limited right arm ability; and perform handling, feeling, and fingering with no limitations (R. 96-97).

### C.  The ALJ's Decision

After reviewing the evidence and conducting the relevant inquiry, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of September 15, 2015, and denied her application for benefits (R. 33). The ALJ first determined that claimant meets the insured status requirements of the SSA and determined that the Plaintiff had not engaged in substantial gainful activity since September 1, 2015 (R. 27). The ALJ next found Plaintiff to suffer from the following severe impairments: right shoulder supraspinatus tendinopathy, degenerative disc disease of the cervical spine, and obesity (R. 28). However, the ALJ found Plaintiff's hypertension and right carpal tunnel not to be severe because neither had more than a minimal effect on her ability to perform basic work (*id.*). Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of

the Listings (*id*.). The ALJ then determined that Plaintiff has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; could never kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; could frequently reach in all directions with the dominant right upper extremity; and should avoid concentrated exposure to vibrations and workplace hazards, such as unprotected heights and machinery (*id*.). In making this determination, the ALJ considered Plaintiff's subjective complaints, but found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (R. 29). The ALJ also considered the opinion of Dr. Bixler, which she accorded partial weight because evidence received at the hearing level showed that the claimant is more limited than Dr. Bixler determined (*id*.). Dr. Valbuena's opinion was also considered and accorded little weight because even though she briefly treated the claimant, she had not examined the claimant for almost a year prior to providing her assessment; did not discuss the claimant's active resistance to examination and her non-compliance with treatment; and because her notes, that Plaintiff should limit activity, were temporary and did not specify what activities should be avoided (*id*.). The ALJ ultimately determined that, based on the VE's testimony, Plaintiff was capable of performing her past relevant work as a as a data entry clerk, telemarketer supervisor, or appointment clerk, and that Plaintiff has not been under a disability from the alleged onset date (R. 32-33).

## IV.   DISCUSSION

Plaintiff argues that the ALJ committed reversible error in denying Plaintiff's application for benefits because the decision was not based on substantial evidence. Specifically, Plaintiff contends that (i) the ALJ's reasons for according "little weight" to the opinion of Dr. Valbuena,

Ms. Borges's treating physical medicine and rehabilitation specialist, are not supported by substantial evidence; (ii) the residual functional capacity finding is unsupported by a medical opinion or substantial evidence; (iii) the ALJ's reasons for discrediting Ms. Borges's testimony are not supported by substantial evidence; and (iv) the ALJ's finding that Ms. Borges can return to her past relevant work is not based on substantial evidence.

Defendant, on the other hand, avers that (i) substantial evidence supports the ALJ's evaluation of Plaintiff's allegations and RFC; (ii) substantial evidence supports the ALJ's assessment of the medical opinions; (iii) the ALJ provided substantial evidence for her RFC finding without abdicating her role; and (iv) the ALJ properly relied on the VE's testimony to find Plaintiff could perform her past relevant work.

## A. Assessment of Medical Opinions

Plaintiff contends that the ALJ's reasons for according "little weight" to Dr. Valbuena's opinions are not supported by substantial evidence, and that if her opinion was credited, Plaintiff could not be found capable of performing her past relevant work. Defendant, however, insists that substantial evidence supports the ALJ's findings.

In determining the claimant's RFC, the ALJ evaluates every medical opinion received and assigns it a particular amount of weight. *See* § 404.1527(c). The ALJ generally grants more weight to a medical opinion the longer a medical provider has treated a claimant and the more knowledge that the provider has about a claimant's impairment. 20 C.F.R. § 404.1527(c)(2)(i), (ii). The ALJ assigns more weight to a provider's opinion based on the amount of "relevant evidence" provided to support it, as well as the strength of her explanation. *Id.* § 404.1527(c)(3). The ALJ reserves certain administrative findings for her own determination, and thus a provider's opinions that a claimant is disabled and that the claimant's impairment is severe enough to meet one of the

listed impairments are not due special significance. *Id.* § 404.1527(d).

The ALJ must give a treating provider's medical opinion "substantial or considerable weight," unless the ALJ clearly articulates good cause for discrediting that opinion. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 861 (11th Cir. 2019). Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* When the ALJ articulates specific reasons for failing to give the opinion of a treating provider controlling weight, and those reasons are supported by substantial evidence, the court should not reverse the Commissioner's decision. *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2015)); s*ee also Hunter v. Comm'r of Soc. Sec*., 609 F. App'x 555, 558 (11th Cir. 2015) ("When the administrative law judge's articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error."). Furthermore, "[t]o the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Hunter*, 609 F. App'x at 558.

Here, the ALJ thoroughly addressed the medical records in making the RFC determination, including the opinions of Dr. Bixler and treating doctor, Dr. Adriana Valbuena (R. 28-32). Dr. Bixler opined in his December 2016 disability determination that Plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push/pull with limited right upper extremity; reach in any direction overhead with limited right arm ability; and perform handling, feeling, and fingering with no limitations (R. 96-97). In contrast, the ALJ noted, Dr. Valbuena opined in a July 2018 assessment that during an 8-hour workday, Plaintiff could sit for 4 hours; stand or walk for 4 hours; lift up to 10 pounds frequently with both extremities, and up to 20 pounds occasionally with her

left upper extremity; that her pace and accuracy of keyboarding would be noticeably diminished; and that she likely would be able to use her arms and hands without significant exacerbation of her symptoms at a medium pace and thus concluded that Plaintiff perform sedentary work (R. 573-75). The ALJ determined that only little weight should be afforded to Dr. Valbuena's July 2018 assessment and a portion of Plaintiff's medical notes from October 2016 because: (1) she had not examined Plaintiff for almost a year before providing her July 2018 assessment; (2) Dr. Valbuena did not discuss Plaintiff's active resistance to examination and her non-compliance with treatment; (3) the October 2016 opinion, that Plaintiff should limit activity for 5 days, was a temporary indication and the notes did not specify what activities the claimant was instructed to avoid; and (4) the opinion is contradicted by the diagnostic testing, which revealed minimal deficits, and no redness, weakness, or swelling on examination (R. 30).

First, Plaintiff contends that the ALJ's reasons for affording Dr. Valbuena's opinion little weight are not supported by the evidence. However, Plaintiff does not contest that Dr. Valbuena had not personally seen Plaintiff for nearly a year before preparing her July 2018 assessment, and while Dr. Valbuena may have had access to more recent records, there is no indication that any records were reviewed or relied upon in making the assessment, which the ALJ found to render the assessment of Plaintiff's condition at that time conclusory. Moreover, the ALJ's determination that Dr. Valbuena's opinion is contradicted by the record is supported by substantial evidence. There are testing records and medical notes within the record, and on which the ALJ relies, that show minimal deficits, and no redness, weakness, or swelling on examination, and which contradict the more severe limitations opined in Dr. Valbuena's July 2018 assessment (R. 30-32). *See Womble v. Comm'r of Soc. Sec*., 705 F. App'x 923, 926-28 (11th Cir. 2017) (holding that substantial evidence supports the ALJ's decision to assign little weight to treating opinions because

the opinions were "not supported by the doctors' own treatment notes, the objective medical evidence, and appear to have been based primarily on [plaintiff's] subjective complaints").

Moreover, even if the discounting of Dr. Valbuena's opinions was in error, it was harmless, for these opinions are not inconsistent with the ALJ's ultimate determination. "If the ALJ does not give a treating physician's opinion controlling weight, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. However, when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006) (citation omitted).

Plaintiff avers that if Dr. Valbuena's opinion was fully credited, Plaintiff could not be found capable of performing her past work in light of the VE's testimony that a limitation of no reaching shoulder height or above with the dominant right upper extremity, would eliminate all past work (ECF No. 18 at 15). This is not a fair characterization of Dr. Valbuena's opinion. Dr. Valbuena did not opine that Plaintiff could *never* reach above shoulder height with her right upper extremity; rather, she opined that Plaintiff's reach at or above shoulder level with her right arm was limited to just one hour on a regular and sustained basis (R. 573). The evaluation form in which Dr. Valbuena offered this opinion included an option for the doctor to indicate Plaintiff could never engage in this activity, and Dr. Valbuena did not select that option to express Plaintiff's limitations. Her opinion that Plaintiff could reach and manipulate at shoulder height—rarely with her right arm, without limitation with her left arm—is consistent with the RFC. Critically, Dr. Valbuena's July 2018 assessment concluded that "Plaintiff could perform sedentary work on a sustained basis" (R. 569), which is also consistent with the ALJ's ultimate determination that Plaintiff could perform her past relevant work as a as a data entry clerk,  telemarketer supervisor,

or appointment clerk – all of which have a sedentary exertion level (R. 32).

In fact, the RFC included certain limitations that were even more conservative than Dr. Valbuena's findings: the RFC limited Plaintiff's standing to two hours, and her ability to lift and/or carry to 10 pounds occasionally and less than 10 pounds frequently (R. 28), while Dr. Valbuena opined she was capable of standing for four hours, and lifting up to 10 pounds frequently (R. 573). Because the ALJ articulated specific reasons supported by evidence for giving less than full weight to Dr. Valbuena's opinion, and because affording Dr. Valbuena's opinions more weight would not have affected the ALJ's final determination, this determination should not be disturbed on review. *See Watson v. Astrue*, No. 508-CV-446-OC-GRJ, 2010 WL 750339, at *9 (M.D. Fla. Mar. 4, 2010) (finding the limited weight afforded to a treating physician to be harmless because even if the entirety of that physician's opinion was incorporated into the RFC assessment, the result would be the same, and "[t]here is no reason to remand a case for additional proceedings, as here, where there is no reason to believe that the remand would lead to a different result").

### B.   RFC Is Supported by Substantial Evidence

Plaintiff avers that because the ALJ rejected the only medical opinions on record and failed to obtain a supplemental medical opinion, the basis for the ALJ's RFC determination is unclear and unsupported by substantial evidence of record, and instead is based on lay review of raw medical evidence.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1545(a)). Along with age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work. *Id.* (citing 20 CFR § 404.1520(f)). "[T]he task of determining a claimant's

16

residual functional capacity and ability to work is within the province of the ALJ, not of doctors" and "[t]he ALJ makes this determination by considering the claimant's ability to meet the physical, mental, sensory, and other requirements of work." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (citing 20 C.F.R. § 416.945(a)(4)). While the ALJ has a duty to develop the record where appropriate, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision." *Robinson* 365 F. App'x at 999 (citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)). *See also Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (finding the ALJ did not err in denying claimant's request for a consultative examination).

Here, the undersigned finds that there was sufficient evidence for the ALJ to make an informed decision. The ALJ gave some weight to the opinions of Dr. Valbuena and Dr. Bixler, both of which supported the RFC assessment, and also considered Plaintiff's own subjective complaints. Furthermore, there were other medical records generated by Dr. Valbuena and other treating physicians that were cited to and relied upon by the ALJ in making the RFC determination. In fact, the ALJ conducted a detailed review of the medical evidence in the record in support of the RFC assessment, including Dr. Valbuena's medical notes from March 2016 (R. 430-37) and August 2016 (R. 420-22), which included the opinions that the steroid injections provided significant pain relief and that Plaintiff's reported tenderness was out of proportion to the examination (R. 31). As such, the record contained sufficient evidence for the ALJ to make an informed decision even after discounting the opinions of Drs. Bixler and Valbuena.

This is in stark contrasts to the case of *Hernandez v. Barnhart*, on which Plaintiff relies, where the ALJ acknowledged that the record contained "no medical source statements from any

treatment sources" and thus the court found that "the ALJ erred in not obtaining a medical source statement from the consultants who actually examined Plaintiff." 203 F. Supp. 2d 1341, 1355 (S.D. Fla. 2002). Similarly, Plaintiff's reliance on *Touchton v. Comm'r of Soc. Sec.*, No. 6:14-cv-709-Orl-TBS, 2015 WL 12859393 (M.D. Fla. July 13, 2015) is misplaced. There, there issue being addressed was whether the ALJ failed to comply with SSR 83-20 (now SSR 18-1p), in determining of the established onset date. *Id*. at \*6. The *Touchton* court determined that under SSR 83-10, the ALJ was required "to obtain opinion evidence from a medical expert where an onset date must be inferred." *Id*. at \*6. Here, there is no allegations regarding non-compliance with SSR 18-1p, and thus this rule in inapplicable to the issues raised by Plaintiff.

Despite Plaintiff's argument, there is no indication that the ALJ made her own medical determination but rather that she properly weighed the opinions in the record and, to the extent they conflicted, resolved those conflicts. She was accordingly not required to order a consultative examination in order to develop a full and fair record. *See Ybarra,* 658 F. App'x at 543 (finding that despite discounting physician's opinion, the ALJ was not required to order a consultative examination based as there was sufficient evidence on the record, and did not usurp the role of a physician where she used those other reports and opinions in coming to a determination).

## C.    Assessment of Plaintiff's Allegations

When a plaintiff attempts to prove disability based on his subjective complaints, she must provide evidence of an underlying medical condition and offer either (1) objective medical evidence confirming the severity of her alleged symptoms, or (2) evidence establishing that her medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that she has

an impairment that could reasonably expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id*. Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record (R. 29).

Plaintiff contends that the ALJ applied an incorrect legal standard by requiring Plaintiff to show that she was "precluded from performing all work-related activities" (ECF No. 18 at 20). Examination of the ALJ's decision, however, reveals no such standard was applied, but rather, the statements about which Plaintiff now complains are made in the context of the ALJ's findings that the Plaintiff's claims were not entirely consistent with the other evidence. Specifically, after digesting a year's worth of treatment and therapy notes, the ALJ compared the Plaintiff's hearing testimony to the evidence and concluded:

> The claimant's testimony indicates marked restriction of even simple daily activities, but the evidence as a whole does not substantiate any good cause for such inactivity, apart from the claimant's own preference….her alleged inability to use her right upper extremity seems to be a choice rather than a medical necessity.

(R. 31). It was not the ALJ who interjected the notion that Plaintiff was (or must be) "precluded from all" activities; it was Plaintiff, who testified that she was so limited in her daily abilities that she could not cook, nor drive, nor sleep, nor do laundry. The ALJ's finding that the record evidence did not support the degree of severity claimed by <u>Plaintiff</u> is supported by substantial evidence, including, as noted in her decision, evidence of Plaintiff's non-compliance with physical therapy and resistance to manipulation during examination (*id*.).

Plaintiff also contends that the ALJ erred in selectively citing from evidence in the record and failing to address certain evidence and claims such as side effects of her medication and the

19

occupational therapy report. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in its decision, so long as the ALJ's decision enables us to conclude that the ALJ considered the claimant's medical condition as a whole." *Robinson*, 365 F. App'x at 995 (citing *Dyer*, 395 F.3d at 1211). In making the determination that the intensity, persistence, and limiting effects of Plaintiff's symptoms are not entirely consistent with the medical evidence and other evidence in the record, the ALJ did indeed consider Plaintiff's medical condition as a whole.

The ALJ acknowledged the symptoms and limitations averred by Plaintiff, and evidence supporting some limitations, including that Plaintiff stopped working "because she kept fainting and her medication caused drowsiness"; that her partner helped her with daily chores and activities; her consistent complaints of pain; MRI tests revealing mild osteoarthritic changes of the right shoulder; treatment for right shoulder supraspinatus tendinopathy; cervical spine x-ray results showing joint hypertrophy and facet hypertrophy; and a nerve conduction study revealing carpal tunnel (R. 30-31). However, the ALJ also relied upon other evidence in the record that is inconsistent with the persistence and limiting effects of the symptoms alleged by Plaintiff, including right shoulder x-ray results showing no evidence of acute fracture or abnormalities; medical recording noting no swelling, tenderness, redness, weakness or neurological deficits; previous reports by the Plaintiff that that she had no issue with sitting, standing, and walking; and Plaintiff's conservative treatment, with no mention of surgery (*id.*). The ALJ also noted that certain treatments including steroid injections and physical therapy helped improve her condition, and that the Plaintiff's records note compliance with treatment has been a barrier to improvement, despite improvement with consistent treatment (*id.*).

Ultimately, the ALJ explained that she accepts the Plaintiff has some limitations in functioning due to her impairments and, as previously noted, that Plaintiff's complaints were

considered in her RFC assessment: "Although the undersigned does not believe the claimant is functionally limited to the extent she alleged, the residual functional capacity has been reduced to account for her conditions and symptoms." Thus, the ALJ properly assessed and considered Plaintiff's symptoms and limitations, and remand is not warranted on this ground.

**D.      Plaintiff's Ability to Return to past Relevant Work.**

Finally, Plaintiff contends that, based on her arguments addressed above, the ALJ erred in finding that Plaintiff could perform her past relevant work. Specifically, Plaintiff insists that "[h]ad the ALJ properly determined the limitations flowing from Ms. Borges's shoulder impairment, as confirmed by Dr. Valbuena, the vocational witness testimony by Ms. Fetter supports a finding of disability" (R. 18 at 24). Plaintiff again points to the VE testimony that no reaching above the shoulder would be work preclusive, as would limiting one's hands to occasional usage. However, Plaintiff cites to no medical evidence to support these restrictions. As addressed above, Dr. Valbuena found that Plaintiff could perform sedentary work, noting that Plaintiff could use her hands and arms at a medium pace without exacerbation of symptoms; that she had little to no restrictions using her left upper extremity; and that Plaintiff was able to grasp, push, pull, manipulate and reach at or above shoulder level with her right arm for limited periods of time, and lift up to 10 pounds frequently with both extremities (R. 573).

"The plaintiff bears the burden of demonstrating she is unable to perform her past relevant work either as she performed the work in the past or as the work is generally performed in the economy." *Marichal v. Comm'r of Soc. Sec.*, No. 20-20209-CIV, 2020 WL 8812849, at *10 (S.D. Fla. Dec. 17, 2020), *report and recommendation adopted sub nom. Marichal v. Saul*, No. 20-20209-CIV, 2021 WL 879518 (S.D. Fla. Mar. 9, 2021). "[A]n ALJ may rely on information contained in the Dictionary of Occupational Titles to determine whether a claimant can perform

her past relevant work as it is generally performed in the national economy." *Scott v. Comm'r of Soc. Sec.*, 440 F. App'x 726, 728 (11th Cir. 2011), *see also* 20 C.F.R. § 404.1560(b)(2) (explaining that the Social Security Administration "may use ... resources, such as the Dictionary of Occupational Titles ... published by the Department of Labor, to obtain evidence ... to help ... determine whether you can do your past relevant work, given your residual functional capacity").

Here, the ALJ properly relied on the VE testimony, which incorporated the information contained in the DOT, to determine that Plaintiff could perform her past relevant and sedentary work. The VE testified that the DOT classified the demands of the Plaintiff's past relevant work as a customer service representative, DOT Code 205.362-026, as skilled (SVP 6), with a light exertional level; data entry clerk, DOT Code 203.682-054, as semi-skilled (SVP 4), with a sedentary exertional level; telemarketer supervisor, DOT Code 299.357- 014, as semi-skilled (SVP 4), with a sedentary exertional level; and appointment clerk, DOT Code 237.367-010, as semi-skilled (SVP 3), with a sedentary exertional level (R. 32). The ALJ's reliance on this VE testimony is "an acceptable way to determine whether a claimant retains the capacity to perform past relevant work." *Marichal*, 2020 WL 8812849, at *10 (finding the "the ALJ properly utilized the testimony of the VE" where "[t]he VE relied upon the DOT in his response, which can be used to define the job as it is usually performed in the national economy") (citing SSR 82-61). As such, the ALJ's finding that the Plaintiff could perform her past relevant work is valid and supported by substantial evidence.

## V.   RECOMMENDATION

The undersign respectfully recommends that Plaintiff Lidia Borges' Motion for Summary Judgment (ECF No. 18) be **DENIED** and that Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment (ECF No. 19) be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 6th day of April, 2021.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE